UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PURVA P., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 23 CV 2660 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Purva P. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion to reverse and remand [16] is denied, the Commissioner's motion for summary judgment [22] is granted, and the denial of benefits is affirmed.[1]

**Background**

In November 2020, plaintiff applied for a period of disability and disability insurance benefits, alleging an onset date of June 29, 2020. [11-1] 15. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge (ALJ). [*Id.*] 15-34. The Appeals Council denied review in February 2023, *see* [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff has appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. [11-1] 18. At step two, the ALJ determined that plaintiff had the following severe impairments: history of lumbar spine surgery with degenerative disc disease, cervical spine spondylosis and surgery, fibromyalgia, hypertension, diabetes mellitus, and

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [11-1], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. [6].

obesity. [*Id.*] 18-20. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 20-25. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform sedentary work, except that plaintiff (1) could never crawl or climb ladders, ropes, or scaffolds; (2) could only frequently balance and no more than occasionally climb rams or stairs, stoop, crouch, or kneel; (3) must have a sit/stand option allowing her to stand for 1-2 minutes after sitting for 30 minutes; (4) could reach in all directions no more than frequently; and (5) must avoid concentrated exposure to extreme temperatures, wetness, vibration, and work hazards. [*Id.*] 25-33. At step four, the ALJ held that plaintiff could perform her past relevant work as an insurance broker. [*Id.*] 33-34. Accordingly, the ALJ concluded that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

### A.  Updated Medical Opinion

Plaintiff argues that the ALJ should have obtained an updated medical opinion respecting an MRI of her cervical spine that was taken in October 2021, after the state agency doctors had opined on her RFC. [16] 5-8. This MRI, plaintiff notes, documented multilevel moderate degenerative changes with moderate central canal stenosis and moderate bilateral neuroforaminal stenosis at C5-C6 and C6-C7. *See* [11-1] 457-58. Because ALJs are not qualified to interpret raw medical data like MRIs, plaintiff contends that the ALJ should have submitted the MRI to expert scrutiny to determine whether it supported her disability claim. The Court rejects this argument.

Under "applicable regulations and Seventh Circuit case law, it is within the ALJ's discretion to consult a medical expert when the evidence received is inadequate to determine whether the claimant is disabled." *Marnie M. v. O'Malley*, No. 20 CV 7511, 2024 WL 3650212, at *2 (N.D. Ill. Aug. 5, 2024) (internal quotation marks omitted). "[T]he reviewing court defers to the ALJ on the question of how much

2

evidence must be gathered" because "the practical reality is that no record is complete–one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on." *Bertaud v. O'Malley*, 88 F.4th 1242, 1245 (7th Cir. 2023).

That said, an ALJ may not "'play doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). While the ALJ may summarize treatment notes and medical opinions, "it is for doctors, and not ALJs, to interpret x-rays, MRIs, and other raw medical data[.]" *Theresa M. v. Saul*, No. 19 C 3135, 2020 WL 7641286, at *5 (N.D. Ill. Dec. 23, 2020). The Seventh Circuit has thus been "especially critical of ALJs' attempts to deduce the meaning of MRIs without medical assistance." *Baptist v. Kijakazi*, 74 F.4th 437, 443 (7th Cir. 2023). "An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments." *McHenry*, 911 F.3d at 871. But an ALJ need not solicit an updated medical opinion in the face of a new MRI where a claimant's "treating doctors reviewed the new evidence and determined that [a claimant] could remain on her current course of treatment." *Baptist*, 74 F.4th at 444.

If the ALJ in this case had reviewed plaintiff's October 2021 MRI herself and concluded, without medical input, that it was consistent with or otherwise supported the RFC determination, the case would likely need to be remanded. But that is not what happened.

After the MRI was taken, plaintiff initially treated her back, shoulder, and neck pain with epidural injections, but these were ineffective. *See* [11-1] 29; [*id.*] 464-65. Plaintiff was then referred to a Dr. Yadla for consideration of an anterior cervical diskectomy and fusion surgery of the C5-C6 and C6-C7 vertebrae. [*Id.*] 465. Plaintiff underwent this surgery in mid-December 2021. [*Id.*] 684. Shortly after the surgery, plaintiff reported that her pain had "noticeably improved" and she was preparing to begin physical therapy. [*Id.*] 491, 518. As of February 2022, plaintiff rated her pain as 5/10 and reported that she was taking Tylenol with "fair success." [11-4] 2399. The ALJ relied on these post-MRI developments–an apparently successful surgery and reports of improved and/or decreased pain–to determine plaintiff's RFC. *See* [11-1] 28-29. What's more, plaintiff does not cite any post-surgical MRI or other raw medical data that might have shed objective light on the status of plaintiff's cervical spine issues after the surgery; she similarly cites no evidence that her treaters had new or significant concerns about her spinal condition. *Cf. Baptist*, 74 F.4th at 443 (remand for expert review of new MRI unwarranted where claimant's treaters had reviewed MRI and discussed it with claimant but did not identify new symptoms or limitations or recommend new treatment). Nor does plaintiff explain why, given that she underwent the cervical diskectomy and fusion surgery and her own reports that her

pain had improved, the ALJ needed to submit the MRI to expert scrutiny–particularly when the surgery was directed at the very issues revealed by the MRI.

For those reasons, the Court does not see this as a case where the ALJ relied on her own layman's interpretation of raw medical data to support the denial of benefits. *Cf. McHenry*, 911 F.3d at 871 (remanding where "ALJ alone compared the test results with earlier treatment records to determine if [claimant's] back impairment in 2014 existed at the same level of severity during the relevant period"). Nor was it a case where the ALJ impermissibly ignored a potentially decisive MRI reflecting that a claimant's condition had worsened after the state agency reviewers had given their opinions. *Cf. Agnieszka F. v. Bisignano*, No. 23 CV 2079, 2025 WL 2229796, at *2-3 (N.D. Ill. Aug. 5, 2025) (although ALJ appropriately "did not attempt to explain what impact the November 2021 MRI had on plaintiff's physical RFC," remand was warranted because ALJ "did not use the report of the results of that MRI as an aid to evaluating the plaintiff's testimony"). Rather, this was a case where the ALJ appears to have accepted that the October 2021 MRI reflected that plaintiff's cervical spine issues had worsened, so much so that surgery was recommended within two months of the MRI, and evaluated plaintiff's disability claim in light of the subsequent surgery and her reports that her condition had somewhat improved. In these circumstances, the Court cannot say that the pre-surgery MRI "changed the picture so much that the ALJ was required to seek an updated opinion to account for it." *Baptist*, 74 F.3d at 443.

### B.  Opinion Evidence

Plaintiff also argues that the ALJ erred in weighing the opinion of her treating pain specialist, Dr. Keith Schmidt. [16] 8-13. The Court disagrees.

An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id.* "An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Id.* "In considering the supportability and consistency of a medical opinion," moreover, the ALJ "need only minimally articulate[ ] her reasoning for the persuasiveness of the medical opinion." *Lisa L. v. O'Malley*, No. 20-CV-50395, 2024 WL 1013977, at *2 (N.D. Ill. Mar. 8, 2024).

4

On November 1, 2021–more than six weeks before plaintiff underwent the diskectomy and fusion surgery–Dr. Schmidt completed a Physical RFC Questionnaire in which he opined that plaintiff had the following limitations (among others): (1) plaintiff's pain would constantly interfere with the attention and concentration needed to perform even simple work; (2) she was capable of only low-stress jobs; (3) she could not walk more than half a block without resting; (4) she could sit for up to four hours and stand for up to four hours during the workday; (5) she would need to change positions at will from sitting, standing, or walking; (6) she would need to stop working every 45 minutes to walk for ten minutes; (7) she had significant limitations with reaching, handling, or fingering; and (8) she was likely to have good days and bad days. [11-1] 480-84. The ALJ did not find Dr. Schmidt's opinion persuasive:

> While Dr. Schmidt is a treating pain management physician, he noted generally brief 30 minutes exams every 2-3 months. At the hearing, the claimant testified that she sees this doctor about 2-3 times a year and last saw him after her surgery in December 2021 to get a prescription. Dr. Schmidt did not refer to specific treatment notes to support any of the check marks on this form including physical limitations, a need to walk around, a need for unscheduled breaks, limitations in looking down/up, turning head, being in static position, postural limitations, and use of hands. Indeed, such limitations are not seen in the actual record, including Dr. Schmidt's own treatment notes around the time of this form at Exhibit 7F, lasting or expected to last at least 12 continuous months, so as to warrant additional limitations. Examinations on the whole have shown intact ambulation, full motor strength in the extremities, and no focal deficits (Exhibits 1F, 2F, 4F). The undersigned has considered the claimant's complaints of pain with standing and walking for prolonged periods combined with obesity in limiting her to a sedentary residual functional capacity with a sit/stand option allowing her to stand for 1-2 minutes after sitting for 30 minutes. It is noted that the claimant had no limitations with fine or gross manipulations at the consultative evaluation (Exhibit 2F) and denied any such limitations at the hearing. However, the lifting limitations assessed by Dr. Schmidt have been given some consideration in limiting the claimant to lifting and carrying up to 10 pounds occasionally and less than 10 pounds frequently, as heavier amounts can aggravate pain and/or discomfort in the neck, shoulders, arms, elbows, wrists, hands, and fingers. Dr. Schmidt did not refer to specific treatment notes to support the check marks on this form regarding good versus bad days, or a need to be absent from work at least once a month. Overall, the extent of limitation assessed is not consisted [*sic*] or supported by the record and has not been explained by the doctor by way of supporting objective clinical findings.

5

[11-1] 33.

The Court concludes that the ALJ minimally articulated her reasons for finding that Dr. Schmidt's opinion was unpersuasive.

First, the ALJ permissibly considered the nature and frequency of Schmidt's and plaintiff's treating relationship, which the ALJ concluded was not especially intensive. *See Jeremy J. v. Kijakazi*, No. 21 CV 128, 2024 WL 4683472, at *2 (N.D. Ill. July 21, 2023) ("The ALJ was entitled to discount Dr. Lubenow's opinion based on the length and nature of Dr. Lubenow's treating relationship with Jeremy."). Second, while plaintiff argues that it was unreasonable for the ALJ to discount the opinion based on Dr. Schmidt's failure to refer to specific treatment notes that supported "any of the check marks" on the RFC questionnaire, *see* [16] 11, that omission "goes directly to the regulation's requirement that the ALJ consider the 'internal supportability' of a medical opinion and assess 'the objective medical evidence and supporting explanations presented by a medical source' in supporting the opinion." *Jonah D. v. Dudek*, No. 22 CV 6460, 2025 WL 947892, at *12 (N.D. Ill. Mar. 28, 2025) (quoting 20 C.F.R. § 404.1520c). Third, "[m]edical opinions may be discounted if they are inconsistent with the record as a whole." *Chambers v. Saul*, 861 F. App'x 95, 101 (7th Cir. 2021). Here, the ALJ reasonably concluded that there was no evidence in the broader record that was consistent with Dr. Schmidt's opinion that plaintiff required unscheduled breaks and was significantly limited in her ability to walk, use her hands, and turn her head. *See* [11-1] 33. Indeed, plaintiff's briefing does not even address this component of the ALJ's decision to discount Schmidt's opinion. "Fourth, the ALJ permissibly concluded that Dr. Schmidt's opinion that plaintiff had manipulative limitations was inconsistent not only with plaintiff's own testimony, *see* [*id.*] 49, but also with the findings from a March 2021 consultative examination, where plaintiff performed fine and gross manipulations with intact finger grasp and hand grip, *see* [*id.*] 28, 389.

The Court also rejects plaintiff's argument, *see* [16] 10-11, that the ALJ failed to address the "most significant" component of Dr. Schmidt's opinion: that plaintiff's pain was so severe that it would constantly interfere with the attention and concentration needed to perform simple work. *See* [11-1] 481.[3] While the ALJ did not address that limitation in the section of her decision devoted to weighing Dr. Schmidt's opinion, she addressed it earlier in the decision. *Cf. Henderson v. Kijakazi*, Case No. 22 C 3890, 2023 WL 6388143, at *3 (N.D. Ill. Sept. 29, 2023) ("The court applies a common-sense reading to the entirety of an ALJ's decision" and "reads the ALJ's decision as a whole."). At step two, the ALJ considered–and rejected–Schmidt's

---

[3] Plaintiff contends that the Commissioner "concedes" that the ALJ failed to address this part of Dr. Schmidt's opinion, *see* [24] 3, but that is inaccurate. After arguing that the ALJ was not required to consider this part of the opinion, the Commissioner argued that "the ALJ relied on substantial evidence in finding plaintiff's pain did not prevent her from concentrating on tasks." [23] 10.

opinion that plaintiff "has problems with attention and concentration." [11-1] 19. As with other parts of Dr. Schmidt's opinion, the ALJ observed that Schmidt "did not refer to specific treatment notes to support this statement" [*id.*], which was true. *See* [*id.*] 481 (opining on plaintiff's attention and concentration issues but citing no supporting evidence). The ALJ also considered the broader record–specifically the treatment notes prepared by Dr. Schmidt, her primary care physician Calvin Fischer, and her physical therapist– and concluded that it "does not show the claimant having any limitations . . . with concentration . . . lasting or expected to last for at least twelve continuous months." [*Id.*] 19. Plaintiff has not challenged any of these findings, and the Court concludes that substantial evidence supports the ALJ's handling of this part of Dr. Schmidt's opinion.

Finally, the ALJ did not err in concluding that "the extent of limitation assessed" by Dr. Schmidt "has not been explained by the doctor by way of supporting objective clinical findings." [11-1] 37. Plaintiff contends that Schmidt pointed to the October 2021 MRI to support the limitations that he identified, *see* [16] 11-12, but the Court does not believe that is a plausible way to interpret Schmidt's RFC questionnaire. In response to a question asking him to "[i]dentify the clinical findings and objective signs," Schmidt wrote, "MRI of Cervical Spine results in moderate bilateral neuroforaminal stenosis levels C5-7." [11-1] 480. As the Court reads the RFC questionnaire, it appears that Dr. Schmidt was simply identifying the MRI as a "clinical finding[ ] and objective sign[ ]" to support his diagnosis that plaintiff had cervical radiculopathy with stenosis. *See* [*id.*] (diagnosing plaintiff with this condition). Nowhere in the questionnaire did Dr. Schmidt actually say that the results of the MRI established or supported his opinion that plaintiff's pain was so severe that it would constantly interfere with her ability to concentrate and pay attention. Accordingly, the record permitted the ALJ to conclude that Dr. Schmidt had not explained how the objective evidence in the record supported the limitations that he assessed.

## Conclusion

Plaintiff's motion to reverse and remand [16] is denied, the Commissioner's motion for summary judgment [22] is granted, and the denial of benefits is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 24, 2025**

7